IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16CV613-GCM

| | | |
|---|---|---|
| MARCUS LEE CRUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CITY OF CHARLOTTE and | ) | |
| D. TROPEANO, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment (Doc. No. 12) and Defendants' Motion for Summary Judgment (Doc. No. 10). These motions are fully briefed and ripe for disposition.

### I. FACTUAL BACKGROUND

Plaintiff Marcus Crump shines shoes for a living at No Grease, Inc., a barbershop located in one of several street-level suites that surround the Spectrum Center, the largest arena in the city of Charlotte. Crump shines shoes at a special chair inside the barbershop. With permission from No Grease's owners, Crump sometimes sets up a display chair outside of the barbershop on the sidewalk immediately adjacent to the shop. Crump's display includes a folding chair, small table, and umbrella affixed to the chair. The display sits against the exterior wall of No Grease. Crump sometimes sits in or next to the chair, smokes a cigarette and works on shoes that have been left for care, or the shoes customers remove for polishing while they get a haircut. Crump uses this display only to advertise his services. His customers do not sit in this chair outside of the barbershop to have their shoes shined. Instead, Crump takes the customer inside of the barbershop and uses a special shoe shine chair that No Grease's owners have set up there. As

1

part of his arrangement with No Grease, Crump pays the barbershop's owners a percentage of his collected fee from each shoe shine or repair.

The barbershop is located inside an area that the Defendant City of Charlotte defines in its ordinances as a "congested business district." Section 6-436 of the City Code of Ordinances restricts "peddling" within the congested business district. Peddling is defined by the ordinance as:

> the sale or offering for sale at retail on foot or from any vehicle where it is proposed by such person so offering or selling *such article of merchandize* to deliver the *article of merchandise* to the purchaser instantly upon receipt of the purchase price.

Section 6-431. (emphasis added).

In August of 2012, Defendant Tropeano, on-duty as a bicycle patrol officer with the Charlotte-Mecklenburg Police Department (CMPD), issued Crump a citation for allegedly peddling within the business district, in violation of City of Charlotte Ordinance § 6-436. Crump was convicted in District Court, but his lawyer appealed, as Crump had no inventory of merchandise or goods, but just offered shoe shines and repairs inside the barber shop. The District Attorney apparently agreed, and dismissed the citation on December 10, 2012. The Notice of Dismissal read that the charge would be "hard to sell to [a] jury," due to "MA inventory." Crump was told by the clerk's office that "MA" stood for "missing actual."

On January 21, 2013, Plaintiff set up his shoe shine display outside of No Grease to advertise his services. Near his shoe shine chair, Crump had some brushes and polish, tools that he normally used to shine his customers' shoes as he sat and smoked. The brushes and shoe polish were not for sale; Crump did not display any "for sale" signs on or near the display. While Crump was sitting in the display chair, three CMPD bicycle patrol officers, including Tropeano, approached. Tropeano confronted Crump by stating, "Didn't the judge tell you [that]

you couldn't be out here." Crump explained that the previous case had been dismissed. Tropeano told Crump that the prior dismissal "didn't matter." Crump tried to explain that he was not "peddling" anything, and had permission from No Grease's owners to advertise the shop's shoe-shine service with the display chair. As Tropeano and Crump disagreed, one of No Grease's owners, Damien Johnson, came outside and spoke to Tropeano. Johnson informed Tropeano that that Crump was a No Grease "employee" and had permission to set up the display outside of the barbershop, and that Crump's display was on the portion of the sidewalk No Grease had available for use under its lease. Ignoring Johnson's explanation that Crump worked for the barber shop, Tropeano arrested Crump for peddling in a congested business district without a permit. Although the warrant did not specify the ordinance violated, City of Charlotte Ordinance § 6-432 prohibits peddling without a license. Specifically, the ordinance states:

> It shall be unlawful for any person required to have a license to peddle any *article of merchandise* upon the streets or sidewalks of the city until such person shall have first secured a proper license to peddle the *articles of merchandise*, . . .

City of Charlotte Ordinance § 6-432. (emphasis added). On April 25, 2013, the charge against Crump was dismissed.

Plaintiff filed the present Complaint in state court, alleging malicious prosecution and prosecution in violation of the Fourth Amendment. Defendants subsequently removed the case to this Court. Plaintiff now moves for partial summary judgment as to the liability of Defendant Tropeano.[1] The Defendants have moved for summary judgment as to both claims.

---

[1] Crump originally sued another CMPD officer, H.P. Kimbell, but later dismissed his claims against Officer Kimbell.

## II.    DISCUSSION

Summary judgment as to any claim or issue is warranted when the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To determine whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to non-moving party and draw all reasonable inferences from that evidence in that party's favor. *See Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 429, 435-36 (4th Cir.2001)

### A. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must allege that the defendant "(1) initiated or participated in the earlier proceeding [against the plaintiff]; (2) ... maliciously; (3) without probable cause; (4) and the earlier proceeding ended in favor of the plaintiff." *Turner v. Thomas*, 794 S.E.2d 439, 444 (N.C. 2016). The first and fourth elements are not at issue here.

The first issue that must be addressed is whether probable cause existed for Tropeano to arrest Crump. The North Carolina Supreme Court has defined probable cause with respect to malicious prosecution as "the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution." *Pitts v. Village Pizza, Inc.*, 249 S.E.2d 375, 379 (N.C. 1978) (citation omitted). "Whether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court." *Best v. Duke University*, 448 S.E.2d 506, 510 (N.C. 1994).

The facts herein are established, and while the Defendants' version may differ slightly, there is no genuine issue of material fact. Tropeano arrested Plaintiff while he was sitting at a

display that advertised shoe shines outside the barber shop where his shoe shine chair was located. Crump was not offering any articles of merchandise for sale. Tropeano charged Crump with peddling without a permit even after the barbershop's owner explained that Crump was his employee or, at least, was working under the authority of the shop. Tropeano had never seen Plaintiff servicing a customer in the outside chair, and any person getting a shoe shine from Crump would be taken to the chair inside the store. It is further undisputed that the prior peddling charge, which did not refer to a "permit," was dismissed with a note that Plaintiff did not have any "inventory" to sell, and Tropeano was advised that the prior charge had been dismissed.

The Court takes these facts against the backdrop of the Ordinances and related state statutes. As noted above, the City Ordinance at issue defines peddling as "the sale or offering for sale at retail . . . article[s] of merchandise . . . to [be] deliver[ed] . . . to the purchaser instantly upon receipt of the purchase price." Section 6-431. Article of merchandise is defined as "anything of value offered for sale to the public." *Id.* Defendants argue that "anything of value" can include the "sale" of services as well as merchandise. Defendants' interpretation defies common sense and the plain language of the ordinance, as well as related provisions of the City Code and state law.

The Classification Codes and License Schedule in effect in January 2013, at the time of Crump's arrest, specifically references the state statutory definition of a "peddler" found at N.C. Gen. Stat. § 105-53.[2] In the License Schedule, a peddler is a "[p]erson who travels from place to place with inventory and offers for sale at retail the actual inventory, occupying no space for

---

[2] This statute which required peddlers to secure a license from the N.C. Secretary of Revenue was actually repealed in 1996 and replaced with N.C.G.S. § 66-250, effective July 1, 1997 as part of a massive change in tax and licensing laws.

more than 30 minutes during any 24 hour period." Section 13-51, Licensing Tax Schedule (July 1, 2012 to June 30, 2013).

The definition of a "peddler" in § 13-51 clearly did not apply to Plaintiff. He did not spend his day moving around, staying only 30 minutes every 24 hours at No Grease. Plaintiff worked there regularly and Tropeano found him there, at the same location, every time they interacted. Tropeano was informed that Plaintiff worked for the barbershop. Further, Plaintiff did not sell or offer for sale any "inventory." Defendant's expansive reading of "articles of merchandise" in §6-431 to include services cannot be reconciled with the term "inventory" in § 13-51, and its statutory reference to N.C. Gen. Stat. § 105-53. The last version of that statute defined a peddler as someone selling an "inventory of goods." The replacement statute continued the definition of a "peddler" as "[a] person who travels from place to place with an inventory of goods, who sells the goods at retail or offers the goods for sale at retail, and who delivers identical goods." N.C. Gen. Stat. § 66-250. Lest there be any doubt what "goods" mean, the legislature has stated that:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty.

N.C. Gen. Stat. § 25-2-105.

Plaintiff was arrested on January 21, 2013 for not possessing a peddler's permit in the congested business district, though he was not a peddler — he did not travel from place to place or have any inventory of goods for sale. Instead, he offered the service of shining and repairing shoes at a licensed barber shop, whose owner vouched for him. On those undisputed facts and

6

upon review of these ordinances and statutes defining peddling, this Court finds that Tropeano lacked probable cause to arrest and charge Plaintiff.

Defendants argue that Crump's prior conviction in district court provided the probable cause when arresting him in January of 2013. However, it is undisputed that the prior conviction was dismissed on appeal due to missing inventory and Officer Tropeano was informed by Mr. Johnson that the charge was dismissed. Tropeano could have easily investigated further to determine on what basis the charge was dismissed but chose not to do so. In addition, at the time of Plaintiff's arrest, Tropeano was aware that Plaintiff worked with the barbershop because he was informed of that fact by the owner of the business. Tropeano testified that the interior shoe shine chair was visible through the front window of the barbershop. Nonetheless, Tropeano arrested the Plaintiff for peddling without a permit.

The third essential element to a claim of malicious prosecution is malice. "In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice. Implied malice may be inferred from want of probable cause in reckless disregard of the plaintiff's rights." *Kirschbaum v. McLaurin Parking Co.*, 656 S.E.2d 683, 688 (N.C. Ct. App. 2008) (citation omitted). If Plaintiff's allegations are taken as true, Defendant Tropeano's actions could be found to have been done with "reckless and wanton disregard" for Crump's rights. However, that is an issue for the jury to decide.

Defendants raise several arguments with regard to immunity but conflate the doctrines of "public officer" immunity, "sovereign" immunity, and "qualified" immunity. To the extent that the Defendants argue that official capacity claims are barred, the City of Charlotte has passed an ordinance, codified at § 2.3 of the City Charter, that waives governmental immunity from tort claims against its police officers. The ordinance has also been found to waive public officer

immunity. *See Lowder v. Payne*, 739 S.E.2d 627 (N.C. Ct. App. 2013). When a municipality has waived its immunity, the municipality and its employee "as sued in his *official* capacity, are not immune from suit for [the employee's] alleged negligent acts." *Thompson v. Town of Dallas*, 543 S.E.2d 901, 904 (N.C. Ct. App. 2001) (emphasis added).

Defendants likewise contend that Officer Tropeano is entitled to public officer immunity and thus cannot be liable in his *individual* capacity for malicious prosecution. In general, the concept of public officer immunity shields an officer from individual liability:

> As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.

*Wilcox v. City of Asheville*, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012) (quoting *Smith v. State*, 222 S.E.2d 412, 430 (N.C. 1976)). However, the doctrine of public officer immunity does not apply to claims of intentional torts. *Wells v. N.C. Dep't of Corrections*, 567 S.E.2d 803, 813 (N.C. Ct. App. 2002) ("[I]f the plaintiff alleges an intentional tort claim, a [public officer immunity] determination is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity."). Malicious prosecution is an intentional tort. *See Stanback v. Westchester Fire Ins. Co.*, 314 S.E.2d 775, 779 (N.C. Ct. App. 1984) (holding that malicious prosecution is "clearly an intentional tort."). Moreover, the malicious prosecution claim specifically alleges malice, which also pierces the cloak of governmental immunity. *Wilcox*, 730 S.E.2d at 230. Finally, an allegation that Tropeano acted without probable cause is a charge that he acted beyond the scope of his lawful authority. *Roberts v. Swain*, 487 S.E.2d 760, 764 (N.C.1997). Accordingly, public officer immunity does not shield the Defendant from liability.

## B. Fourth Amendment Claim

Plaintiff also alleges that his arrest by Officer Tropeano violated his Fourth Amendment right to be free from unreasonable searches and seizures, including arrests without probable cause. "Unquestionably, the Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007). Specifically, "allegations that [an officer] seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a § 1983 malicious prosecution claim alleging a seizure that was violative of the Fourth Amendment." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996).

The issue of whether an arrest is reasonable or supported by probable cause is "evaluated under an objective standard, based on what a prudent officer would have believed under the circumstances." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012). That is, proof of malice is not required. Based upon the Court's conclusion above that Defendant Tropeano lacked probable cause to arrest Crump, the arrest constitutes an unreasonable seizure under the Fourth Amendment.

Defendants argue that qualified immunity protects Tropeano from constitutional liability. The affirmative defense of qualified immunity protects police officers and public officials from constitutional liability "for reasonable mistakes as to the legality of their actions." *See Saucier v. Katz*, 533 U.S. 194, 206 (2001). To determine whether qualified immunity applies, the Court determines whether the officer's conduct violated a constitutional right, and if so, "whether the constitutional right violated 'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was

unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 661-62 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). The seizure of an individual without probable cause is clearly a violation of that individual's Fourth Amendment constitutional rights. Thus, the Court must determine whether that right was clearly established. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Saucier*, 533 U.S. at 201. "The right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 665 (quoting *Saucier*, 553 U.S. at 202). Moreover, "[f]or a right to be clearly established, it is not necessary for the 'exact conduct at issue' to have been previously held unlawful. Rather, 'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Id*. at 665-66 (citations omitted).

Based upon the plain language of the City Ordinances at issue, as well as the related North Carolina statutes, the Court finds that no reasonable police officer in Tropeano's position could have believed that the Fourth Amendment permitted an arrest when no aspect of the (peddling without a permit) violation had been established. *See Id*. at 666. Plaintiff was shining shoes for a licensed barbershop. He was not travelling from place to place with an inventory of goods, staying in no location for more than 30 minutes a day. His right to be free from arrest under the circumstances of this case is clearly established. Accordingly, Officer Tropeano is not entitled to qualified immunity.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment as to the liability of Defendant Tropeano is hereby GRANTED IN PART AND DENIED IN PART. Summary judgment is granted as to Plaintiff's Section 1983 claim and denied as to Plaintiff's malicious prosecution claim.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment is hereby DENIED.

Signed: October 12, 2017

Graham C. Mullen
United States District Judge